IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                Criminal Action: 5:07-cr-38

RAYMOND LOY,

       Defendant.

**REPORT AND RECOMMENDATION
DEFENDANT'S MOTION TO SUPRESS BE DENIED.**

**I. INTRODUCTION**

**A.**    **Background**

Defendant was the only defendant named in a twenty count indictment alleging production of child pornography in violation of Title 18, United State Code, sections 2251(a), (e).

**B.**    **Motion**

On March 21, 2008, Defendant filed a Motion to Suppress Evidence.[1] The Government filed its response on April 8, 2008.[2]

**C.**    **Recommendation**

Based upon a review of the record, the undersigned recommends that Defendant's Motion to Suppress be **DENIED** because 1) the search warrant complied with the requirements of the Fourth Amendment and 2) even had the warrant violated the Fourth Amendment, the Leon

---

[1] Docket No. 27.

[2] Docket Nos. 42, 43.

1

good faith exception applies.

## II. FINDINGS OF FACT

On May 18, 2007 at approximately 6:00 p.m., Detective Grishkevich of the Weirton Police Department was at the M&B Market in Weirton, West Virginia. Tina Long, the clerk at the market, asked to talk to the detective. Tina told Detective Grishkevich about the operation of a strip club at a private residence, her daughter's involvement at the club as a dancer, and asked whether it was lawful to operate a strip club in a private residence. The detective said he wasn't sure and that it depended on the facts. When Detective Grishkevich later saw Tina's daughter, Heather Long, at the M&B Market, he told her he wanted to ask her a few questions about "something" she was involved in and asked whether she would come to the Weirton police station to speak with him.

At approximately 7:00 p.m., Heather arrived at the Weirton police station and voluntarily spoke with Detective Grishkevich and Detective Alexander. Heather described the operation of a strip club at a private residence, her involvement as a dancer, that minors were involved, and that the operator may be a registered sex offender. She described the residence where the alleged strip club was operated and the location she and others parked to enter the residence.

Detective Alexander and Lieutenant Shreiner attempted to locate the residence described by Heather but were unable to do so. They returned to the police station and picked up Heather so she could point out the residence. Heather identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Heather's previous description of the residence and parking area matched the description of 111 Sellitti Lane and its accompanying parking area.

At approximately 10:30 p.m., Detective Alexander called Detective Grishkevich and

informed him Heather had identified the residence at 111 Sellitti Lane as the site of the alleged strip club. Detective Grishkevich began drafting a search warrant application, including an affidavit establishing probable cause for the search of the residence located at 111 Sellitti Lane. He called Magistrate Hicks and informed him of the pending search warrant application.

At approximately 11:00 p.m., Heather, Detective Alexander, and Lieutenant Shreiner returned to the station. Heather provided another statement about her involvement in and the activities at the alleged strip club. Detective Alexander wrote a summary of her statement and asked Heather whether everything written was correct. Heather affirmed it was, and Heather, Detective Alexander, and Lieutenant Shreiner signed their names at the bottom of the statement. After continued discussions with Heather, Detective Alexander wrote an addition to Heather's statement. After Heather affirmed everything written in the addition was correct, Heather, Detective Alexander, and Lieutenant Shreiner signed their names under the addition. Heather was shown a photo of Defendant and positively identified him as the operator of the strip club. Heather left the station.

Magistrate Hicks arrived at the police station. The County offices for Hancock County are in New Cumberland, a considerable distance north of Weirton. All the Hancock County Magistrates live in Weirton. It is the common practice of all the Magistrates to go to Weirton Police Department to consider after-hours search warrant applications if there is no need for the facilities at the county offices. Detectives Alexander and Grishkevich briefed the Magistrate on their investigation, presented the Magistrate with evidence Defendant was a convicted and registered sex offender, and discussed with the Magistrate the search warrant application. The Magistrate asked whether Heather was credible. Detective Grishkevich said he had never

3

worked with Heather and therefore could not say whether she was credible. Magistrate Hicks requested Heather's statement be attached to the search warrant application.

Detective Grishkevich attached Heather's statement to the search warrant application and labeled the statement, "Attachment #3." He then completed the search warrant application. The completed search warrant application consisted of 6 pages. The first page was titled "Affidavit and Complaint for Search warrant" and identified the property to be seized as "See Attachment #1; described the premises to be searched as "See Attachment #2;" and identified Attachment #3 as the facts in support of the affiant's belief. The second page consisted of the search warrant. The third page was titled, "Attachment #1." The fourth page was titled, "Attachment #2." The fifth and sixth page was comprised of "Attachment #3." The affidavit prepared by Detective Grishkevich was not attached to the search warrant application.

Magistrate Hicks reviewed the search warrant application and suggested amendments be made to "Attachment 2," items to be seized. He asked Detective Alexander to raise his right hand and whether he swore or affirmed everything presented was true and accurate. Detective Alexander responded he so swore. Magistrate Hicks signed the search warrant. At approximately 1:30 a.m. on May 19, 2007, the search warrant was executed. Defendant was located inside the residence. Among other items, officers seized numerous photos, VHS tapes, computer equipment, compact discs, floppy disks, and a secret videotaping system. The VHS tapes contained footage of several underage girls at the residence in various stages of undress.

### III. <u>Motion to Suppress</u>

**A.** **<u>Contentions of Parties</u>**

Defendant argues the evidence seized from his residence should be suppressed because

the search warrant relied on by the officers did not comply with the Fourth Amendment. Defendant also argues the illegality of the search cannot be cured by the Leon good faith exception.

The Government argues Defendant's Motion to Suppress should be denied because the search warrant complied with the Fourth Amendment. The Government further argues that even if the search warrant was defective, the evidence seized from Defendant's residence should not be suppressed because the Leon good faith exception applies.

**B.** **Analysis**

**1.** **Whether the Search Warrant Complied with the Fourth Amendment.**

The Warrant Clause of the Fourth Amendment requires a search warrant 1) be issued by a neutral and detached magistrate, 2) contain a "particular description of the place to be searched, and the persons or things to be seized," and 3) be based upon "probable cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994). Defendant alleges the search warrant did not comply with these requirements of the Fourth Amendment because 1) there was no sworn affidavit or contemporaneous statements by the officer attached to the search warrant application; 2) Magistrate Hicks was not a neutral and detached magistrate; 3) there was no corroboration of Heather Long's statements or a determination Heather was credible; and 4) the information contained in the search warrant application and relied on by Magistrate Hicks did not support a finding of probable cause.

The Government argues the search warrant complied with the Fourth Amendment.

Each of Defendant's allegations are addressed in turn.

i. <u>"There was no sworn affidavit or contemporaneous statements by the officer attached to the search warrant application**."**</u>

Defendant argues the search warrant was defective because it was unaccompanied by a sworn affidavit or sworn testimony from the Detectives establishing probable cause for the search. The Government concedes the Detectives did not submit a "narrative statement summarizing the investigation and the information believed to establish probable cause." (Plaintiff's Brief, p. 8). The Government argues, however, the Fourth Amendment does not require the facts establishing probable cause for the search be presented in the form of a sworn affidavit or testimony from the officer. The Government alleges the Fourth Amendment requires only that the facts establishing probable cause be supported by oath or affirmation.

The Fourth Amendment specifies, "no warrants shall issue**,** but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. However, "[t]he Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.'" <u>Clyburn</u>, 24 F.3d at 617. Accordingly, a Magistrate may consider statements made by the officer or others in conjunction with the search warrant application, so long as the officer ultimately swears to the truth of those statements. <u>United States v. Legg</u>, 18 F.3d 240, 243 (4th Cir. 1994).

In light of the above Fourth Circuit precedent, the Court finds the search warrant complied with the Fourth Amendment's "oath or affirmation" requirement, despite being unaccompanied by a traditional sworn affidavit from Detective Alexander. Detective Alexander attached Heather's statement where his sworn affidavit normally would be attached, and

explained on the Affidavit and Complaint for Search Warrant that Heather's statement was the "basis for his belief." Magistrate Hicks was also informed about Heather's identification of the residence and Defendant's status as a registered sex offender. At the conclusion of the presentation of the search warrant application, Detective Alexander affirmed to Magistrate Hicks that the information presented to the Magistrate was true to the best of his knowledge. The search warrant therefore complied with the Fourth Amendment's requirement that the information presented to the Magistrate be supported by "oath or affirmation."

      ii.    <u>"Magistrate Hicks was not a neutral and detached magistrate."</u>

Defendant alleges the search warrant was invalid because Magistrate Hicks was not "neutral and detached," as required by the Fourth Amendment. Specifically, Defendant alleges it was inappropriate for the Magistrate to 1) appear at the same police station he formerly worked at as Chief of Police; 2) direct Detective Alexander to attach Heather's statement to the application; and 3) direct Detective Alexander to include specific items in Attachment 2, "Property to be Seized." The Government contends the above conduct does not disqualify Magistrate Hicks as a "detached and neutral" magistrate.

The Fourth Amendment protects against unreasonable searches and seizures by, in part, requiring search warrants be issued by a "neutral and detached" magistrate. As explained by the Supreme Court,

> "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from their evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

<u>Johnson v. United States</u>, 333 U.S. 10, 13-14 (1948). Accordingly, the magistrate may not serve

as a "rubber stamp" for the police. See United States v. Leon, 468 U.S. 897, 914 (1984). Whether a magistrate was neutral and detached is an "individualized and contextual inquiry." United States v. Ramirez, 63 F.3d 937, 941 (10th Cir. 1995).

The Court finds Magistrate Hicks acted as a "neutral and detached" magistrate. First, although Magistrate Hicks was the former Chief of Police at Weirton Police Department, and although Detective Grishkevich testified Magistrate Hicks was "the boss," there is no evidence the Magistrate's status as former Chief inappropriately influenced the Detectives' actions or statements. Second, the Magistrate's decision to meet the Detectives at the station was the product of his practice, and the practice of other Magistrates, for handling after-hours warrant requests, not an attempt to unduly influence the Detectives. Third, there is no evidence Magistrate Hicks had direct contact with Heather, was involved in any way in the drafting of her statement, or participated in the execution of the search warrant. Finally, the Magistrate's suggestion the Detectives attach Heather's statement or amend the contents of Attachment 2 does not indicate the Magistrate breached his duty as a neutral and detached magistrate. See United States v. Evans, 629 F. Supp. 1544, 1554 (D. Conn. 1986) [holding the magistrate was "neutral" despite suggesting to the officers they include specific items in the warrant application.]; Ramirez, 63 F.3d at 941 [holding the magistrate's additions and alterations to the affidavit did not call into question the magistrate's neutrality, because they were "mere common sense extensions of the contents of the narrative portion of the same affidavit."]; compare Lo-Ji-Sales, Inc. v. New York, 442 U.S. 319, 321-324 (1979), [holding the town justice breached his duty as a neutral magistrate when he signed an open-ended search warrant, participated in the actual search and seizure, and allowed the warrant to be completed based on the results of the

8

search].

   iii. "There was no corroboration of Heather Long's statements or a determination Heather was credible."

Defendant argues Heather's statement should not have been relied on as supporting a finding of probable cause because her statement was not corroborated and because Heather's credibility was never investigated. The Government argues Heather's statement was properly relied on as supporting a finding of probable cause because the totality of circumstances established Heather was reliable and credible.

Probable cause may be supported by reliable information from an informant. The reliability of the information depends on the "totality of circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). One factor influencing the reliability of the information is the degree to which the information has been corroborated. United States v. Miller, 925 F.2d 695, 698-700 (4th Cir. 1991). Officers need not, however, conduct an independent investigation aimed at corroborating the alleged criminal conduct or ascertaining the informant's credibility. Id. Rather, it is sufficient for the officers to corroborate "innocent" facts alleged by the informant as opposed to facts establishing criminal conduct, because where "an informant is shown to be right about some things, he is probably right about other facts that he alleged, including the claim that the object of the tip is engaged in criminal activity." Alabama v. White, 496 U.S. 325, 331 (1990), relying on Gates, 462 U.S. at 244.

Viewing the totality of circumstances confronting the Detectives and the Magistrate, the Court finds the officers reasonably concluded Heather's statement was reliable. First, it was Heather's mother, as opposed to Heather herself, who first approached the police. Second, Heather cooperated with the police despite being concerned she was "in trouble" and provided

9

them with her name, birth date, social security number, and telephone number.  See Gates, 462 U.S. at 233-34 [holding "if an unquestionably honest citizen comes forward with a report of criminal activity - which if fabricated would subject him to criminal liability - rigorous scrutiny of the basis of his knowledge is unnecessary."].  Third, Heather's demeanor, the consistency of her statements, and her affirmation her written statement was true suggested she was telling the truth.  Finally, the officers were able to corroborate Heather's belief a registered sex offender lived at the residence and her description of the residence and associated parking area.  The corroboration of such "innocent" facts alleged by Heather was sufficient to establish the reliability of the remainder of her statement.  See White, 496 U.S. at 331.

    iv.    "The information contained in the search warrant application and relied on by Magistrate Hicks did not support a finding of probable cause."

Defendant argues the search warrant was not supported by probable cause because absent Heather's statement - which Defendant argues should have been disregarded, "the only concrete information presented to Magistrate Hicks was that Defendant was a registered sex offender who lived at 111 Sellitti Lane."  Defendant argues such information was insufficient to support a finding of probable cause.  The Government contends the search warrant was supported by probable cause.

A search warrant may only be issued upon a showing there exists probable cause to search the described location.  See U.S. Const. amend. IV.  "Probable cause" to search is described as "a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  However, "probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules."  Id. at 232.  Probable cause exists "where the known facts

10

and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found," Ornelas v. United States, 517 U.S. 690, 696 (1996), and may be established through any reliable source. Draper v. United States, 358 U.S. 307, 313 (1959).

In reviewing the probable cause determination by a judicial officer, "the task of the reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Furthermore, "when reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issues the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

The Court finds the search warrant was supported by probable cause, or, facts establishing there existed a "fair probability" a search of 111 Sellitti Lane would reveal evidence of a violation of West Virginia Code section 61-8A-5.[3] First, Heather's statement established she was 19 years old and worked as a dancer at "Ray's Hideaway," a strip club operated out of the residence at 111 Sellitti Lane; that she was present when Defendant took photos of a minor engaging in sexually explicit poses; that she and other girls were paid by Defendant to dance and perform lap dances and attend VIP rooms with customers. As discussed above, the "totality of circumstances" surrounding Heather's statement established its reliability. Second, there was

---

[3] A violation of section 61-8A-5 occurs when, "[a]ny adult who, with knowledge that a person is a minor or who fails to exercise reasonable care in ascertaining the age of a minor, hires, employs, or uses such minor to produce obscene matter or to do or assist in doing any sexually explicit conduct . . . ." W. Va. Code § 61-8A-5 (2007).

11

evidence Defendant was a registered sex offender and lived at 111 Sellitti. The entirety of evidence was sufficient to "warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." See Ornelas v. United States, 517 U.S. 690, 696 (1996).

For the above reasons, the Court finds Defendant's challenges to the validity of the search warrant are without merit.

### 2. **Whether the *Leon* Good Faith Exception Applies.**

In the event the Court found the search warrant was defective,[4] the Government argues the evidence seized in Defendant's residence should not be suppressed because the Leon "good faith" exception applies. Defendant argues the Leon "good faith" exception does not apply.

In Leon, 468 U.S. at 920, the Supreme Court held evidence seized pursuant to an invalidated search warrant should be suppressed only where exclusion would further the exclusionary rule's purpose of deterring improper police conduct. As the Court explained, the rule is not well served, and evidence should not be suppressed, where, "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and [has] acted within its scope," even though later review of the warrant reveals it was legally insufficient. Id. at 920. In contrast, where a "reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization," the evidence should be suppressed. Id. at 922. The Court in Leon identified four situations where an officer's reliance on the validity of a warrant could not be construed as reasonable:

       1) the magistrate was misled by information in an affidavit that the officer knew was false     or would have known was false except for the officer's reckless disregard of the truth;

---

[4] The Court did not find the search warrant was defective. Nevertheless, in the interest of thoroughness, the Court addresses whether the Leon good faith exception applies.

2) the magistrate wholly abandoned his detached and neutral judicial role;

3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;

4) the warrant was so facially defective, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid."

Leon, 468 U.S. at 923.

Assuming, arguendo, the search warrant was defective, the Court agrees with the Government that the Leon good faith exception would apply to cure the illegality of an otherwise warrantless search. First, there is no evidence the Detectives misled Magistrate Hicks at any point. Second, there is no evidence Magistrate Hicks abandoned his role as a neutral and detached magistrate. Third, there is no evidence the warrant was based on an affidavit "so lacking in probable cause." As discussed above, probable cause was established by Heather's partially-corroborated statement, evidence of her identification of the residence, and evidence Defendant was a registered sex offender. Finally, there is no evidence the warrant failed to particularize the place to be searched or items to be seized.

## C.  Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's Motion to Suppress be **DENIED** because 1) the search warrant complied with the requirements of the Fourth Amendment and 2) even had the warrant violated the Fourth Amendment, the Leon good faith exception applies.

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any

objections shall also be submitted to the Judge Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the defendant and counsel of record, as applicable.

DATED: April 21, 2008

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE